1    **WO**

2

3

4

5

6    **IN THE UNITED STATES DISTRICT COURT**

7    **FOR THE DISTRICT OF ARIZONA**

8

9    Trident Investment Partners Incorporated,    No. CV-20-01848-PHX-DWL

10                    Plaintiff,    **ORDER**

11    v.

12    Elizabeth Evans, et al.,

13                    Defendants.

14

15          Pending before the Court is a motion for default judgment by Plaintiff Trident

16    Investment Partners Incorporated ("Trident") against Defendants Elizabeth Evans

17    ("Evans"), John Doe Evans, and The Handy Connection LLC (collectively, "Defendants")

18    and a motion to amend the complaint to add Susan Solebello ("Solebello"), Evans's spouse,

19    as a defendant.  (Doc. 17.)  For the following reasons, the motion for default judgment is

20    granted and the motion to amend is denied as moot.

21                                      **BACKGROUND**

22    I.    <u>Factual Background</u>

23          The following facts are derived from Trident's complaint.  (Doc. 1.)  "Since

24    November 1990, [Trident] and its predecessors . . . have operated repair services" under

25    the word and design service marks HANDYMAN CONNECTION.  (*Id.* ¶ 8.)[1]  In 1993,

26    Trident's predecessor began "offering and selling Handyman Connection franchises in the

27    ─────────────────
[1]      "[T]he only difference between a trademark and a service mark is that a trademark
identifies goods while a service mark identifies services."  *Chance v. Pac-Tel Teletrac Inc.*,
28    242 F.3d 1151, 1156 (9th Cir. 2001).  "Service marks and trademarks are governed by
identical standards."  *Id.*

United States and Canada for the right to independently own and operate a Handyman Connection franchised business" and to utilize the marks. (*Id.* ¶ 9.) In 2014, Trident acquired the rights to the "marks and franchise system." (*Id.*) Trident operates in "25 states, including Arizona." (*Id.*)

Defendants, meanwhile, are "engaged in the business of providing home repair and lighting services" and operate under the name "The Handy Connection" in Arizona. (*Id.* ¶¶ 15-16, 20.) Defendants also have "adopted a design mark featuring a house design that is nearly identical to the HANDYMAN CONNECTION design mark." (*Id.* ¶ 16.) Trident, which has "had a franchised location operating [in Arizona] since 2001" (*id.* ¶ 20), claims that Defendants' marks are confusingly similar to the HANDYMAN CONNECTION marks (*id.* ¶ 17).

On June 10, 2020, Trident sent a cease and desist letter "objecting to Defendants' use of the Infringing Mark and putting Defendants on actual notice that their use of the Infringing Mark in connection with any type of home repair . . . constitutes trademark infringement." (*Id.* ¶ 19.)[2]

Defendants continue to operate under "The Handy Connection." (*Id.*)

II.   Procedural History

On September 22, 2020, Trident initiated this action by filing an eight-count complaint, which includes federal claims under the Lanham Act and various state-law claims. (Doc. 1.)

On September 25, 2020, Trident served process on Evans and The Handy Connection LLC, as well as on Evans's spouse, Solebello. (Docs. 10, 11, 12.)

On October 20, 2020, Trident applied for an entry of default against Evans, The

---

[2] Trident sent this cease-and-desist letter to an address in Goodyear, Arizona. (Doc. 1-2 at 12.) However, Evans and Solebello live in Peoria, Arizona, as Trident discovered when serving the complaint. (Docs. 10, 11, 12.) According to Trident's service documents, a woman purporting to be Evans's aunt lives at the Goodyear address. (Doc. 11.) Trident does not acknowledge this oddity, but, in any event, the cease-and-desist letter indicates that it was also sent to what appears to be Evans's email address. (Doc. 1-2 at 12.) This email address matches the email address listed on The Handy Connection's Facebook page (Doc. 1-2 at 7), so the Court is satisfied that Trident has shown that Defendants received the cease-and-desist letter, notwithstanding that it may not have been physically mailed to the correct address.

1   Handy Connection LLC, and Solebello.  (Doc. 15.)

2       On October 23, 2020, the Clerk of Court entered default against Evans, John Doe

3   Evans, and The Handy Connection LLC.  (Doc. 16.)  The Clerk did not enter default against

4   Solebello by name.  (*Id.*)

5       On November 12, 2020, Trident moved for default judgment and moved to amend

6   its complaint to add Solebello as a defendant.  (Doc. 17.)

7                                    **DISCUSSION**

8   I.    Motion For Default Judgment

9       The "decision whether to enter a default judgment is a discretionary one."  *Aldabe*

10  *v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The following factors, known as the *Eitel*

11  factors, may be considered when deciding whether default judgment is appropriate: (1) the

12  possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of

13  the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6)

14  whether the default was due to excusable neglect, and (7) the policy favoring decisions on

15  the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

16      "[T]he general rule" for default judgment purposes "is that well-pled allegations in

17  the complaint regarding liability are deemed true."  *Fair Hous. of Marin v. Combs*, 285

18  F.3d 899, 906 (9th Cir. 2002).  "The district court is not required to make detailed findings

19  of fact."  *Id.*  "However, necessary facts not contained in the pleadings, and claims which

20  are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*,

21  980 F.2d 1261, 1267 (9th Cir. 1992), *superseded by statute on other grounds as recognized*

22  *in United States v. Lozano*, 2020 WL 905676, *3 (S.D. Cal. 2020).

23      A.    **The First, Fifth, Sixth, And Seventh *Eitel* Factors**

24      "In cases like this one, in which Defendants have not participated in the litigation at

25  all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed."  *Zekelman Indus.*

26  *Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020.)

27      The first *Eitel* factor weighs in favor of default judgment.  If the motion for default

28  judgment were denied, Trident would be without other recourse for recovery.  *PepsiCo,*

*Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

The fifth and sixth factors weigh in favor of default judgment or are neutral.  Due to Defendants' failure to participate, there is no dispute over material facts, and there is no indication that default is due to excusable neglect.  *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *Laser Spine Inst., LLC v. Playa Advance Surgical Inst., LLC*, 2020 WL 5658711, *4 (C.D. Cal. 2020) ("There is little possibility of excusable neglect where a defendant fails to appear and respond . . . .") (internal quotation marks omitted).

The seventh factor generally weighs against default judgment, given that cases "should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  However, the existence of Rule 55(b) of the Federal Rules of Civil Procedure, which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive."  *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation marks omitted).  Put simply, "the default mechanism is necessary to deal with wholly unresponsive parties who otherwise could cause the justice system to grind to a halt.  Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 55, at 119-20 (2020) (footnote omitted).

### B.  The Fourth *Eitel* Factor—The Amount Of Money At Stake

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct.  Here, Trident does not seek damages.  (Doc. 17 at 4.)  Instead, Trident seeks a permanent injunction "that will prohibit Defendants from using [Trident's] trademarks or engaging in conduct that creates (or would continue to create) the likelihood of confusion between [Trident] and Defendants," along with attorneys' fees and costs.  (*Id.* at 4, 8.)

In Part I.E below, the Court addresses the sufficiency of Trident's evidence as to an

injunction, attorneys' fees, and costs.  For purposes of the fourth *Eitel* factor, the Court simply notes that "injunctive relief is an appropriate remedy in a trademark infringement action," which "weighs in favor of granting [a] motion for default judgment."  *Nestlé USA, Inc. v. Gunther Grant, Inc.*, 2014 WL 12558008, *12 (C.D. Cal. 2014).  *See also Am. Auto. Ass'n, Inc. v. Lopez*, 2017 WL 2905999, *4 (C.D. Cal. 2017) ("Plaintiff has decided to forgo its claims for damages and instead seeks a permanent injunction.  A permanent injunction with no money damages is reasonably proportionate to the harm caused by Defendant's actions.  Accordingly, this factor weighs in favor of entering default judgment.") (citation omitted).

## C.     The Second And Third *Eitel* Factors—Merits And Sufficiency

That leaves the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint.  "These two factors are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [it] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (alterations in original) (internal quotation marks omitted).  "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important."  *Id.*

Here, Trident appears to request default judgment only as to its infringement, unfair competition, and dilution claims.  (Doc. 17 at 7.)

### 1.     *Trademark Infringement*

"To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion."  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (internal quotation marks omitted).

### a.     Trademark Ownership

As an attachment to its complaint, Trident provided evidence of the marks' registration in the federal Principal Register (Doc. 1-2 at 3-4), which is "prima facie evidence of the mark's validity and entitles the plaintiff to a strong presumption that the

mark is a protectable mark." *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (internal quotation marks omitted).  The word mark has a filing date of January 11, 1993, and the design mark has a filing date of February 26, 2004.  (Doc. 1-2 at 3-4.)[3]  However, the registration lists Neubel, Inc. ("Neubel") as the owner of the word mark and Mamar, Inc. ("Mamar") as the owner of the design mark—not Trident.  (*Id.*)

To support its allegations of ownership, Trident provided a declaration of Jeff Wall, its president and CEO.  (Doc. 17-1.)[4]  The declaration establishes that, although Neubel originally owned the word mark, Neubel assigned ownership to Mamar in December 1993.  (Doc. 17-1 ¶ 5.)  Mamar changed its name to Handyman Connection, Inc. in February 2012.  (*Id.*; Doc. 17-2.)  In January 2014, Handyman Connection, Inc. "merged with, and into, Trident."  (Doc. 17-1 ¶ 5; Doc. 17-3 at 3-11.)  Handyman Connection, Inc. then assigned ownership of the word mark to Trident.  (Doc. 17-3 at 1-2.)[5]  As for the design mark, although Mamar originally owned the design mark, Trident obtained ownership of the design mark when Handyman Connection, Inc. (formerly Mamar) and Trident merged in 2014.  (Doc. 17-1 ¶ 6; Doc. 17-3 at 1-2; Doc. 1-2 at 4 [serial number 76-577,851].)  Trident has sufficiently established that it owns the HANDYMAN CONNECTION marks.

…

…

---

[3]    The filing date, not the registration date, is the critical date for establishing a presumption of ownership.  *See, e.g.*, *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("[T]he registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration . . . .").

[4]    In addition to well-pled allegations in the complaint admitted in default, courts also consider "affidavits and other evidence to establish the truth of [a plaintiff's] allegations."  *Bd. of Trs. of Pipe Trades Dist. Council No. 36 Health & Welfare Tr. Fund v. Clifton Enters., Inc.*, 2013 WL 2403573, *8 (N.D. Cal. 2013); *Hmong I v. Lao People's Democratic Republic*, 2016 WL 2901562, *3 n.3 (E.D. Cal. 2016) (collecting cases).  *See also Denoyer v. PMI Sec. Prot. Inc.*, 2018 WL 1738217, *2 (S.D.N.Y. 2018); *Woods v. CV McDowell, LLC*, 2018 WL 1187492, *3 (S.D. Tex. 2018); *Malibu Media, LLC v. Ling*, 80 F. Supp. 3d 1231, 1239 (D. Colo. 2015).  *But see J & J Sports Prods., Inc. v. Paucar*, 2018 WL 4501057, *4 n.3 (E.D.N.Y. 2018) ("Plaintiff provided some information about the transmission in the Gagliardi Affidavit but this cannot be considered on the liability analysis as it is not the Complaint.") (citation omitted).

[5]    The trademark assignment record from the Patent and Trademark Office lists the word mark's serial number (74-347,412, Doc. 1-2 at 3), rather than the registration number (1,838,843, *id.*).  (Doc. 17-3 at 1.)

1

### b.    Likelihood Of Confusion

In evaluating likelihood of confusion, courts consider the Ninth Circuit's *Sleekcraft* factors: (1) the "strength of the mark," (2) the "proximity of the goods," (3) the "similarity of the marks," (4) "evidence of actual confusion," (5) "marketing channels used," (6) the "type of goods and the degree of care likely to be exercised by the purchaser," (7) the "defendant's intent in selecting the mark," and (8) the "likelihood of expansion of the product lines." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003). "It is well established that this multi-factor approach must be applied in a flexible fashion," and a "determination may rest on only those factors that are most pertinent to the particular case before the court." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). The Ninth Circuit has "developed certain detailed axioms to guide this comparison: first, the marks must be considered in their entirety and as they appear in the marketplace; second, similarity is adjudged in terms of appearance, sound, and meaning; and third, similarities are weighed more heavily than differences." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000) (citations omitted), *abrogated on other grounds as recognized in CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1065 (E.D. Cal. 2009).

Here, Trident has sufficiently established a likelihood of confusion. "Two particularly probative factors are the similarity of the marks and the proximity of the goods," *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017), and both weigh in Trident's favor. Defendants' name is almost identical to Trident's word mark—the only differences are that Defendants add the word "the" and use "handy" instead of "handyman." Defendants' logo is also similar to Trident's design mark: both logos feature "a stylized A-frame house with horizontal lines offsetting the company name." (Doc. 1 ¶ 18. *Compare* Doc. 1-2 at 4, *with id.* at 6-7.) Defendants' logo also contains a lightbulb design inside the house and what appears to be a hammer and screwdriver forming an x-shape below the company name, which are different from Trident's logo, but

"similarities are weighed more heavily than differences." *GoTo.com*, 202 F.3d at 1206. Less similarity between the marks is required if "the goods are complementary, the products are sold to the same class of purchasers, or the goods are similar in use and function." *Sleekcraft*, 599 F.2d at 350 (citations omitted). Therefore, although there are some minor differences between the marks, the similarities outweigh the differences. Less similarity is sufficient in this case because Trident and Defendants both operate in the same service market: home repair and remodeling services. (Doc. 1 ¶¶ 8, 15; Doc. 1-2 at 8-9 [describing the services offered by Defendants].) Trident and Defendants also both operate in the same geographic market: the Handyman Connection franchise has operated in Phoenix, Arizona since at least 2001. (Doc. 1 ¶ 20.)[6]

Trident has also sufficiently established actual confusion. Trident alleges in its complaint that Defendants have caused "significant confusion among consumers," as "Handyman Connection has received inquiries as to whether The Handy Connection is associated with the Handyman Connection franchise system" and some customers "mistakenly contact[ed] 'The Handy Connection' when they had intended to contact 'Handyman Connection.'" (*Id.* ¶¶ 21, 24.) Trident has also proffered evidence of actual confusion. Trident attached the declaration of Allen Hopkins, the owner and general manager of Handyman Connection Phoenix, in support of its motion. (Doc. 17-4.) Hopkins states that on or around September 21, 2020, a "potential customer contacted [the Handyman Connection] office," indicating that he had scheduled services from Handyman Connection but was not listed in its system. (Doc. 17-4 ¶ 6.) "The customer asked if he had reached 'Handyman Connection' and he confirmed that he had scheduled with Handyman Connection." (*Id.*) When the customer "asked if there was a person named 'Linda' in the office and . . . was told there was not, the customer then said he must have talked to 'The Handy Connection.'" (*Id.*) Another incident occurred on or around October 27, 2020, after Trident filed this action, in which a customer inquired over email whether

---

[6]     Trident attached to its motion the declaration of Allen Hopkins, the owner and general manager of Handyman Connection Phoenix, which states that Handyman Connection has operated a franchise in Phoenix since 1995. (Doc. 17-4 ¶ 2.)

"Elizabeth Evans [was] the owner of Handyman Connection."  (*Id.* ¶ 7.)

Trident's allegations and the evidence submitted by Trident establish a likelihood of confusion and, thus, a claim for trademark infringement.  Other courts have held that similar showings are sufficient to establish a likelihood of confusion in the default-judgment context.  *See, e.g.*, *Bob & Me Prods., Inc. v. Lemon Leaf Café, LLC*, 2020 WL 6468406, *4 (C.D. Cal. 2020) (plaintiff had successfully established likelihood of confusion where "both logos [bore] the same restaurant name and an image of a lemon in place of the 'O' in lemon"); *Sarieddine v. Area 51 Pharms, LLC*, 2020 WL 4539024, *3 (C.D. Cal. 2020) (plaintiff had alleged the marks were nearly identical, the defendant sold related products, and there were instances of actual confusion).

## 2. *Unfair Competition*

Trident has also sufficiently established a common law unfair competition claim because "trademark infringement and unfair competition claims brought under the common law and the Lanham Act . . . share the same analysis." *3 Ratones Ciegos v. Mucha Lucha Libre Taco Shop 1 LLC*, 2017 WL 4284570, *2 (D. Ariz. 2017).  *See also Clearly v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition . . . are 'substantially congruent' to claims made under the Lanham Act.").

## 3. *Trademark Dilution*

To prevail on a dilution claim, a plaintiff must show that (1) its "mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008).  A mark is famous if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  "[T]o meet the famousness element of protection under the dilution statutes, a mark [must] be truly prominent and renowned."  *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875-76 (9th Cir. 1999),

*superseded by statute on other grounds as recognized in Aegis Software, Inc. v. 22nd Dist. Agric. Ass'n*, 255 F. Supp. 3d 1005, 1011 (S.D. Cal. 2017) (second alteration in original) (internal quotation marks omitted).  *See also Nissan Motor Co. v. Nissan Comput. Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004) (noting that the dilution statute "extends dilution protection only to those whose mark is a household name") (internal quotation marks omitted); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2571719, *7 (N.D. Cal. 2012) ("The Ninth Circuit has recognized that fame requires a high standard of consumer awareness beyond the trademark owner's specific market—the mark should be a household name or part of the collective national consciousness.") (internal quotation marks omitted).  Marks that have met this exacting standard include TIFFANY, POLAROID, ROLLS ROYCE, and KODAK.  *Fruit of the Loom, Inc. v. Girouard*, 994 F.2d 1359, 1362 (9th Cir. 1993).

Trident has not stated a claim for trademark dilution because Trident has not sufficiently alleged that its marks are famous.  Trident merely makes the conclusory allegation in its complaint that its marks "constitute famous marks within the meaning of 15 U.S.C. § 1125(c)."  (Doc. 1 ¶ 38.)  Trident did not provide any factual allegations demonstrating that its marks are "widely recognized by the consuming public of the United States," "truly prominent and renowned," "a household name," or "part of the collective national consciousness," as courts in this Circuit have required to prevail on a dilution claim.

D.    **Balancing The Factors**

Having considered all of the *Eitel* factors, the Court concludes that default judgment is appropriate as to Trident's claims for trademark infringement and unfair competition.

E.    **Injunctive Relief, Attorneys' Fees, And Costs**

Trident seeks a permanent injunction, $15,420 in attorneys' fees, and $400 in costs. Each category is addressed below.

1.    *Permanent Injunction*

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's

continuing infringement." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). *See also* 15 U.S.C. § 1116(a) (authorizing district courts to grant injunctions to prevent the "violation of any right" of the owner of a registered mark). Nevertheless, "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). "[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). To obtain an injunction, Trident must show that (1) "it has suffered an irreparable injury," (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury," (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted," and (4) "the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts." *Id.* at 394.

### a. Irreparable Harm

Trident argues that, because it has demonstrated a likelihood of confusion, it is entitled to a presumption that irreparable harm will arise in the absence of injunctive relief. (Doc. 17 at 5.) However, the case that Trident cites to establish this proposition, which was decided in 2011, is no longer good law. In 2013, the Ninth Circuit clarified that "[g]one are the days when [o]nce the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue." *Herb Reed*, 736 F.3d at 1250 (second alteration in original) (internal quotation marks omitted). This is because "[t]his approach collapses the likelihood of success and the irreparable harm factors." *Id.* at 1251. Accordingly, the law is now clear that "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Id.* at 1249. "[H]arm to . . . reputation and goodwill, *supported by compelling evidence*, is sufficient to establish irreparable harm." *Apple Inc. v. Pystar Corp.*, 673 F. Supp. 2d 943, 949 (N.D. Cal. 2009) (emphasis

added).  *See also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001), *overruled on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ("*Evidence* of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.") (emphasis added).

Notwithstanding Trident's mistaken belief that it is entitled to a presumption of irreparable harm, the Court concludes that the evidence and allegations proffered by Trident are sufficient—albeit only by a whisker—to establish that it has suffered irreparable harm and will continue to do so in the absence of injunctive relief.  As noted, Trident has submitted a declaration identifying two recent incidents in which potential customers believed they were contracting with the Handyman Connection but were, in fact, contracting with the Handy Connection.  Trident also alleges that it has "invested significant time, money and other resources to advertise, promote and garner goodwill in the [marks] and Handyman Connection brand generally."  (Doc. 1 ¶ 10.)  Finally, the evidence before the Court establishes that Defendants chose to continue their course of infringing conduct even after being served with a cease-and-desist letter.  Although it is true that, "[s]ince *Herb Reed*, numerous district courts have held that evidence of consumer confusion—including actual consumer confusion that has already occurred—is not sufficient to establish a likelihood of irreparable harm," *Samick Music Corp. v. Gordon*, 2020 WL 3210613, *10 (C.D. Cal. 2020), the Court concludes that Trident's evidence and allegations are sufficient to establish that actual harm has occurred and will continue occurring absent injunctive relief.  *Cf. Bob & Me Products,* 2020 WL 6468406 at *8 (issuing permanent injunction as part of default judgment because plaintiff had spent time and resources promoting its mark, had established the loss of business due to the defendant's infringement, and the defendant continued infringing after being given notice); *Starbuzz Tobacco, Inc. v. Ego Premium Liquids, Inc.*, 2014 WL 12573365, *4 (C.D. Cal. 2014) (awarding permanent injunction in trademark infringement action, where "Defendants' infringement [led] consumers to conclude, incorrectly, that the infringing materials that Defendants are advertising originate with or are authorized by Starbuzz,"

because such conduct caused "loss of control over business reputation" and traded "upon Starbuzz's goodwill and business reputation").

### b.      Inadequate Remedy At Law

"District courts must ascertain whether remedies available at law, such as monetary damages, are inadequate to compensate for the injury suffered." *Apple*, 673 F. Supp. 2d at 949.  Monetary damages are inadequate where, for example, there is good reason to believe infringement will continue.  *Id.* at 950 ("[M]onetary damages would not prevent [defendant] from continuing to infringe [plaintiff's] copyrights . . . in the future . . . ; indeed, [defendant's] actions throughout this litigation and statements at oral argument reveal a dogged determination to continue . . . .").  Here, Defendants received a cease-and-desist letter informing them they were infringing Trident's marks yet they did not respond or stop their infringement.  (Doc. 1 ¶ 19; Doc. 17-1 ¶ 11.)  This factor weighs in favor of granting a permanent injunction.  *Adobe Sys. Inc. v. Acheampong*, 2019 WL 7212311, *9 (N.D. Cal. 2019) ("Defendant's failure to appear in this action makes it difficult for plaintiff to prevent further infringement.").  *Cf. Athena Cosmetics, Inc. v. AMN Distrib. Inc.*, 2020 WL 6450395, *3 (C.D. Cal. 2020) ("[W]ithout discovery from Newman—which is impossible in light of his failure to appear—Plaintiff cannot adequately calculate its past and continuing monetary loss, thereby rending legal damages inadequate.").

### c.      Balance Of Hardships

"[T]here is no indication that Defendant would suffer hardship were the court to grant an injunction, as Defendant would only be required to stop using the Mark and would be able to continue to operate its business." *Bob & Me Prods.*, 2020 WL 6468406, at *9.  *See also Mikuni Ginko, Ltd. v. Feng Chen Buffet, Inc.*, 2020 WL 2128646, *5 (C.D. Cal. 2020) ("[T]he balance of hardships favors a permanent injunction because Defendant will suffer no hardship from being required to comply with law and Plaintiff would otherwise lose profits and goodwill.") (citation omitted).  Accordingly, this factor weighs in favor of granting a permanent injunction.

        …

#### d.  Public Interest

An injunction "would not disserve the public interest, but would instead ensure compliance with trademark law.  The purpose of protecting trademarks is to avoid consumer confusion and to ensure that a producer reaps the rewards of having developed desirable products.  By forcing Defendant[s] to cease infringing . . . this Court upholds these aims, as intended by the Lanham Act."  *PRL USA Holdings, Inc. v. Designerbrandsforless, Inc.*, 2020 WL 6694348, \*5 (C.D. Cal. 2020) (citation omitted). *See also Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009) ("The public has an interest in avoiding confusion between two companies' products.").  This too weighs in favor of granting a permanent injunction.

#### e.  Scope

Because all factors weigh in Trident's favor, the Court will grant its request for a permanent injunction.  "[A]n injunction must be narrowly tailored to affect only those persons over which [the Court] has power and to remedy only the specific harms shown by the plaintiff[], rather than to enjoin all possible breaches of the law."  *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (citation and internal quotations omitted).  However, "[w]hen the infringing use is for a similar service, a broad injunction is especially appropriate."  *GoTo.com*, 202 F.3d at 1211 (internal quotation marks omitted).

Trident proposes a permanent injunction which would enjoin Defendants from:

(1)     using service marks, trademarks, trade names or trade dress in connection with the advertisement, promotion, offering or rendering of home repair or remodeling services, or the offering of home repair franchises, that imitate or simulate Handyman Connection's service marks, trademarks, trade names or trade dress;

(2)     performing any actions or using any service marks, trademarks, trade names, trade dress, words, names, styles, titles, designs or marks that are likely to cause confusion or mistake, or to deceive, or to otherwise mislead the trade or public into believing that Defendants are authorized by Handyman Connection, or in some manner affiliated with or associated with, or under the supervision or control of Handyman Connection, or are likely in any way to lead the trade or the public to associate Defendants with Handyman Connection;

- 14 -

(3)     using any service marks, trademarks, trade names or trade dress or engaging in any other conduct that creates a likelihood of injury to the business reputation of Handyman Connection or a likelihood of misappropriation and dilution of Handyman Connection's distinctive service marks, trademarks, trade names and trade dress and the goodwill associated therewith; and

(4)     using any trade practices whatsoever, including those complained of in the Complaint, that tend to unfairly compete with or injure Handyman Connection, its businesses and the goodwill appertaining thereto.

(Doc. 17-8.)  Because Trident and Defendants offer the same type of services, the Court in its discretion determines that Trident's requested injunction is appropriate, with the following adjustments.  The reference to dilution will be omitted because Trident did not prevail on its dilution claim.  The Court will also only enjoin infringement of the word and design marks that Trident asserted in this action.

2.     *Entitlement To Attorneys' Fees*

The Lanham Act authorizes courts to award "reasonable attorney fees to the prevailing party" in "exceptional" trademark infringement actions.  15 U.S.C. § 1117(a).  "[A]n 'exceptional case' is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (en banc) (per curiam) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Octane Fitness*, 572 U.S. at 554.

"Courts applying the *Octane Fitness* analysis commonly find that willful infringement, in conjunction with non-participation in litigation, makes a case 'exceptional.'"  *ADG Concerns, Inc. v. Tsalevich LLC*, 2018 WL 4241967, *13 (N.D. Cal. 2018) (collecting cases).  Trident has alleged that Defendants' infringement is willful because Defendants continued to infringe Trident's marks after receiving a cease-and-

1    desist letter.  (Doc. 1 ¶ 19.)  By defaulting, Defendants have admitted they have committed

2    willful infringement.  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th

3    Cir. 2008) ("[A]ll factual allegations in the complaint are deemed true, including the

4    allegation of Poof's willful infringement of Andrew's trademarks.  This default sufficiently

5    establishes Andrew's entitlement to attorneys' fees under the Lanham Act.").  Defendants'

6    willful infringement, coupled with their failure to participate in the litigation, entitles

7    Trident to reasonable attorneys' fees under the Lanham Act.

8                    3.    *Reasonableness Of The Requested Fee Award*

9         Trident seeks $15,420 in attorneys' fees, consisting of $7,815 charged by Arizona

10   counsel (Doc. 17-5) and $7,605 charged by Pennsylvania counsel (Docs. 17-6, 17-7).  For

11   the reasons explained below, the Court awards $11,610 in fees.

12                    a.    **Arizona Counsel**

13        A declaration attached to the motion establishes the credentials and experience of

14   attorney David Brooks and his billing rate.  (Doc. 17-5.)  Brooks has practiced for 31 years

15   and charged $350/hour, and his paralegal charged $100/hour.  (*Id.* ¶¶ 2-3.)  The Court finds

16   the hourly rates charged to be reasonable and within the range of rates courts in this District

17   have found reasonable.  *See, e.g.*, *Edwards v. Vemma Nutrition*, 2019 WL 5684192, *13

18   (D. Ariz. 2019) (finding hourly rate of $350 for an attorney who had practiced 35 years

19   reasonable and collecting cases).

20        A table containing Brooks's time spent on this matter was also attached.  (Doc. 17-

21   5 at 4-5.)  The Court has reviewed Brooks's time entries and finds that many fail to provide

22   sufficient details.  "The party seeking an award of fees must adequately describe the

23   services rendered so that the reasonableness of the charge can be evaluated."  LRCiv

24   54.2(e)(2).  "If the time descriptions are incomplete, or if such descriptions fails to

25   adequately describe the service rendered, the court may reduce the award accordingly."  *Id.*

26   Time entries for telephone conferences "must identify all participants and the reason for

27   the telephone call."  LRCiv 54.2(e)(2)(A).  Similarly, time entries for emails or other

28   correspondence that do not "identify to whom the [correspondence] was sent or the subject

matter of the [correspondence]" are insufficient.  *Oskowis v. Sedona Oak-Creek Unified Sch. Dist. #9*, 2019 WL 5066821, *8 (D. Ariz. 2019) (declining to grant attorneys' fees for insufficient time entries).  Time entries for legal research must "identify the specific legal issue researched and, if appropriate, . . . identify the pleading or document the preparation of which occasioned the conduct of the research."  LRCiv 54.2(e)(2)(B).

The Court will reduce the fee award accordingly.  The Court will not award fees for the billing entries on September 17, 2020 and October 16, 2020, which fail to provide subject matter of the respective correspondence.  The Court will not award fees for the billing entry on September 28, 2020, which merely states "Paralegal expense."  The Court will also reduce the fees requested for the following billing entries by 50%: September 29, 2020; October 15, 2020; October 20, 2020; October 21, 2020; October 22, 2020.[7]  The Court will reduce the fees requested in the October 28, 2020 entry by 10%.  Last, the Court will not award fees for the billing entry on November 3, 2020, which was completed by an unidentified individual.  After adjusting the amount sought consistent with the reductions identified above, the Court awards Trident $6,062 for Arizona counsel's fees.

### b.    Pennsylvania Counsel

Trident's Pennsylvania counsel did not appear in this case but "prepared and sent the demand letter to Defendants . . . and prepared the initial drafts of the complaint." (Doc. 17-5 ¶ 4.)  A declaration attached to the motion establishes the billing rates and length of practice of Trident's three Pennsylvania attorneys.  (Doc. 17-6.)  David Allsman has practiced for 16 years and charged $425/hour, Ariel Multak has practiced for 1 year and charged $400/hour, and Joseph Brooks has practiced for 3 years and charged $350/hour. (*Id.* ¶ 4.)

Although the declaration provides no explanation why Allsman's hourly rate was higher than his more experienced Arizona co-counsel, the Court nevertheless finds that Allsman's hourly rate is reasonable and is within the range that other courts in this District

---

[7]    These entries listed more than one task within a single entry, some of which are insufficient.  Because the tasks are listed together in a block, the Court is unable to determine how much time was spent on each task.  The Court accordingly awards only a portion of the requested fees for those entries.  *See* LRCiv 54.2(e)(2).

have deemed reasonable.  *See, e.g.*, *Swisher Hygiene Franchise Corp. v. Clawson*, 2019 WL 4169003, *10 (D. Ariz. 2019), *amended upon reconsideration on other grounds*, 2020 WL 2512788 (D. Ariz. 2020).  The declaration also does not explain why Multak, who was admitted to practice in 2019, has a higher hourly rate than Brooks, who was admitted to practice in 2017, nor does the declaration explain why an attorney who has been admitted to practice for just over a year warrants a $400/hour billing rate.  *Cf. id.* (finding associate rates between $212.50 and $276.25 to be reasonable).  "A party seeking fees must prove that the hourly rate sought is reasonable."  *Arnhoelter v. Kaus*, 2020 WL 4673160, *4 (D. Ariz. 2020).  Because Trident failed to provide enough information to gauge the reasonableness of Multak's hourly rate, the Court will reduce Multak's rate to $300/hour.

Pennsylvania counsel's time entries have many of the same deficiencies as those of their local counterparts.  The Court will not award fees for the following billing entries due to counsel's failure to disclose the subject matter of the referenced conference or correspondence: June 5, 2020; June 11, 2020; and September 14, 2020.  The Court will not award fees for the billing entry on June 8, 2020, which merely states "attn to Phoenix infringer."  The Court will also reduce the fees requested for the following billing entries by 40%: Allsman's entry on August 7, 2020; August 27, 2020; September 3, 2020; September 4, 2020; September 15, 2020; September 17, 2020; and September 22, 2020.[8] After adjusting the amount sought consistent with the reductions identified above, the Court awards Trident $5,548 for Pennsylvania counsel's fees.

In total, the Court awards Trident $11,610 in attorneys' fees.

### 4.   *Costs*

Trident also requests $400 in costs, consisting of the complaint filing fee.  "In cases where the plaintiff is the prevailing party, the Lanham Act [also] assigns the payment of litigation costs to the defendant."  *Athena Cosmetics, Inc. v. Timbo Trading Co.*, 2020 WL 4805470, *3 (C.D. Cal. 2020) (citing 15 U.S.C. § 1117(a)).  The Court accordingly awards

---

[8]    These entries listed more than one task within a single entry, some of which are insufficient.  Because the tasks are listed together in a block, the Court is unable to determine how much time was spent on each task.  The Court accordingly awards only a portion of the requested fees for those entries.  *See* LRCiv 54.2(e)(2).

1   the requested $400 in costs.

2                 5.   *Post-Judgment Interest*

3        In its motion, Trident requests that "post-judgment interest be awarded at the

4   statutory rate according to law." (Doc. 17 at 9.)  Trident does not provide any justification

5   for its alleged entitlement to post-judgment interest.  The Court thus declines to award post-

6   judgment interest.

7   II.   Motion To Amend Complaint

8        Trident also moves to amend the complaint to add Solebello, Evans's spouse, as a

9   defendant.  (Doc. 17 at 8.)  Trident "originally sued Elizabeth Evans and John Doe Evans,

10  alleging they are a married couple." (*Id.*)  Accordingly, the Clerk of Court entered default

11  against "Unknown Evans." (Doc. 16.)  Trident argues that, because Solebello was served

12  with the complaint and summons, an "amendment should be allowed adding Susan

13  Solebello as Elizabeth Evans' spouse and default judgment should be rendered against her

14  as well." (Doc. 17 at 8.)

15       Susan Solebello is already a Defendant in this action, albeit named under a

16  pseudonym.  She was named in this action only in her capacity as "the spouse of Elizabeth

17  Evans" and is sued only because "Evans' conduct . . . was for and on behalf of her marital

18  community and is binding on her marital community." (Doc. 1 ¶ 3.)

19       On September 25, 2020—three days after the complaint was filed—a process server

20  personally served Solebello.  (Doc. 12.)  Indeed, all of the Defendants in this action were

21  served via hand-delivery to Solebello (Docs. 10, 11), who informed the process server that

22  "she is Elizabeth's spouse." (Doc. 11.)  Solebello called Evans on the telephone, and Evans

23  then gave the process server "verbal permission to leave the documents with [Solebello]."

24  (*Id.*)  Accordingly, throughout the pendency of this litigation, Solebello has been aware

25  that she is a defendant in this action and that she has been named under the pseudonym

26  "John Doe Evans." (Doc. 1.)

27       Although Trident asserted in the complaint that it would amend the complaint

28  "when the name of Elizabeth Evans' spouse becomes known," (Doc. 1 ¶ 3), it has not done

so and seeks leave to do so now.  Such an amendment would be a mere formality—it would not add a defendant but rather would merely clarify (not change) the identity of an existing defendant (the "Doe" defendant—known to all to be Solebello).

The motion for default judgment against all Defendants, including Solebello, is ripe for resolution now and further delay is not in the interest of speedy determination of this action.  Solebello was properly served.  (Doc. 12.)  The Clerk of Court entered default against Solebello, under the designation "Unknown Evans," which is synonymous with the "John Doe Evans" pseudonym.  (Doc. 16.)  Solebello knows this pseudonym refers to her. There is no impediment to the Court entering default judgment against Solebello now.  *See, e.g.*, *Malibu Media, LLC v. Doe*, 2020 WL 134112, *3 (E.D. Mich. 2020) ("Plaintiff provided a proof of service indicating that the summons, amended complaint and its exhibits, and the corporate disclosure statement were personally served on Defendant John Doe . . . . Granting a default judgment therefore comports with the requirements of due process.").

Furthermore, for clarity's sake, the Court will order the Clerk of Court to amend the caption to replace the pseudonym "Unknown Evans, named as John Doe" with the proper name for this defendant, Susan Solebello.  All allegations in the complaint as to "John Doe Evans," or any other pseudonym clearly referring to Evans's spouse, shall be deemed to pertain to Solebello.  *See, e.g.*, *Twitch Interactive, Inc. v. Johnston*, 2019 WL 3387977, *3 (N.D. Cal. 2019) ("[T]here is no doubt that Mr. Kelly is aware of his own pseudonym.  The Court finds that it would be in the interest of justice to [amend the caption to replace pseudonym with proper name] because it will ensure that the correct person is named and properly held accountable. . . . All allegations in the complaint against 'Alex Renfrow' shall be deemed to be allegations against Jared Kelly.") (citations omitted).

The Court thus denies Trident's motion to amend as moot.

…

…

…

1       Accordingly,

2       **IT IS ORDERED** that the Clerk of Court is directed to amend the caption to replace

3   the pseudonym "Unknown Evans, named as John Doe" with the proper name for this

4   defendant, Susan Solebello.

5       **IT IS FURTHER ORDERED** that the request to amend the complaint is denied as

6   moot.

7       **IT IS FURTHER ORDERED** that the motion for default judgment (Doc. 17) is

8   **granted** as to all Defendants: Evans, Solebello, and The Handy Connection LLC.  A

9   separate judgment against Defendants will issue, after which the Clerk of Court shall

10  terminate this action.

11      Dated this 8th day of January, 2021.

12

13

14                              _____

15                                 Dominic W. Lanza
                               United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28